IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| RICK DENNIS STROBEL,<br><br>Plaintiff,<br><br>vs.<br><br>SHERIFF LEO DUTTON, CAPT. BRAGG, OFFICER BALL, AND LEWIS AND CLARK COUNTY,<br><br>Defendants. | CV 23-5-H-KLD<br><br>ORDER |

Defendants have moved for summary judgment. (Doc. 45.) After a delay, Plaintiff Rick Dennis Strobel responded. (Doc. 55.) The motion will be granted.

**I. BACKGROUND**

The parties do not dispute the events that gave rise to Plaintiff Rick Dennis Strobel's lawsuit. Strobel was an inmate at Lewis and Clark County Detention Center ("LCCDC.") (Doc. 13.) Defendants submitted a video that covers most of what occurred, as an exhibit to the Declaration of Captain Bragg. (Doc. 47, Ex. 1.) The Court has reviewed the video, as have the parties, who rely on some of it in their Statements of Undisputed Fact (Doc. 48) and of Disputed Facts (Doc. 56.)

On January 5, 2023, at 10:46 a.m., there was a fight between inmates in Pod C at LCCDC. (Doc. 48 at 2.) LCCDC staff separated the fighting parties, removed

1

both of them from the pod, and took them separately to other areas of the facility.

Approximately 18 minutes later, the instigator of the prior fight was returned to Pod C, with his lunch in hand. Strobel was seated, eating his lunch. (Doc. 48 at 2.) The other inmate came into the pod, put down the lunch he was carrying, and immediately got into another fight, this time with the plaintiff. Within less than a minute, staff again broke up the fight, and the other inmate was removed from the pod.

After the altercation, Strobel was taken for medical attention. (Doc. 47-5 at 2 - 3.) Strobel had a cut on his forehead and complained of neck and back pain, and headache. The nurse who evaluated Strobel suggested that he be taken to the emergency room, and he was. (Doc. 47-5 at 2.) (The video shows him back in the pod eating his lunch less than ten minutes after the fight; the record shows he went to the emergency room a few hours later. (Doc. 47-5 at 2.)) There, he had x-rays and CT scans that revealed no injury. (Doc. 47-2 at 18.)

Five days later, on January 10, 2023, Strobel posted a lengthy grievance to LCCDC's KIOSK grievance system. (Doc. 47-2 at 7.) (KIOSK appears to be a tradename.) In it, he explained that he had been assaulted on January 5, and he expressed his opinion that the aggressor in the fight should not have been returned to the pod as quickly as he was. He complained of constant pain in his back, neck, leg, and head, and asked to be released from LCCDC so he could pursue follow up

medical treatment. *Id*. A staff member responded the next day that he would have to talk to his attorney about any request for release, and that he should kite the medical department to request to be seen. *Id*. He did not respond further in this grievance chain regarding his contention that the aggressor should not have been returned to the pod. Nor did he file an appeal, which was also available through the KIOSK system, and which he did on other occasions. *See* Doc. 47-2 at 14, 16, and 30. Strobel did, however, file a medical grievance that day, explaining his various pains. (Doc. 47-2 at 26.)

On January 19, 2023, Strobel filed another medical request to see someone about his neck and shoulder pain. (Doc. 47-2 at 10.) Strobel repeated this request on January 20, and stated the pain stemmed from the January 5 assault. (Doc. 47-2 at 18.) On January 25, Strobel again stated that he wanted to see someone about his neck. (Doc. 47-2 at 25.)

On January 31, 2023, Strobel was seen at PureView Health Center. (Doc. 47-8.) There were four reasons listed for his appointment, including shoulder, neck, and arm pain related to the January 5 assault. (Doc. 47-8 at 1.) In the appointment, the doctor reviewed the emergency room notes and imaging from the January 5 visit and provided a handout for range of motion stretches. (Doc. 47-8 at 2.)

Strobel did not file any further medical requests regarding his neck and

shoulder pain.

Strobel filed his initial Complaint on January 19, 2023. (Doc. 1.) He amended his Complaint as of right on March 29, 2023. However, because there was some confusion with another lawsuit, Strobel was directed to file another Amended Complaint containing all of his claims. (Doc. 12.) He did so on May 5, 2023, and that document is the operative complaint, which was served. (Doc. 13.)

**II. ANALYSIS**

Defendants move for summary judgment on four grounds: Strobel failed to exhaust his administrative remedies, Strobel's claims lack sufficient specificity as to the actions of individual defendants, his allegations fail to state a failure to protect claim as a matter of law, and the defendants are all immune from suit, for different reasons. (Doc. 46 at 1 – 2.) Defendants filed a Statement of Undisputed Fact in support of their motion, and the Declaration of Captain Bragg, which is supported by nine exhibits. (Docs. 47 and 48.) Though Strobel filed a document captioned "Statement of Disputed Facts," he does not provide any evidentiary support for it. (Doc. 56.) As such, the documents in the record in support of Defendants' motion are undisputed.

   **A. Standard for Summary Judgment**

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id*. The Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor when deciding a motion for summary judgment. *Id*. at 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

### B. Exhaustion

Defendants assert they are entitled to summary judgment because Strobel failed to exhaust his administrative remedies prior to filing a lawsuit. (Doc. 46 at 4.) Strobel responds that he "tried to talk to jail medical staff and was ignored," he "tried to use grievance procedures," and he "couldn't understand how to process

5

complex materials such as a grievance." (Doc. 55 at 4; 56 at 4.) The record shows that Strobel did not exhaust his grievance procedures.

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93 - 97 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). As such, the Court will analyze Defendants' failure to exhaust contention first.

Defendants bear the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the

6

existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). The prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth*, 532 U.S., at 738.)

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S., at 643.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to

provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. *Id.* Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. *Id.*

      Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.*, at 644. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218. LCCDC has a grievance procedure, a copy of which is available to inmates on the KIOSK system. (Docs. 47 (Decl. Bragg) at 3; 47-3 at 2, and 47-9 at 6.) Strobel's Amended Complaint states that there was a grievance procedure at LCCDC, and that he used it. (Doc. 13 at 6 and 9.) He alleged that he "couldn't appeal. No one answered." (Doc. 13 at 9.)

Defendants submitted a copy of the LCCDC inmate handbook with Captain Bragg's Declaration. (Docs. 47-4 at 2-3; 47-9.) The policy describes the levels of appeal, including, ultimately, the final appeal to the Detention Captain, who, in this case, is Defendant Bragg. (Doc. 47-4 at 3.) The Court concludes that LCCDC had a grievance procedure.

Defendants have established that a grievance policy existed. The burden then shifts to Strobel of "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). The prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

Strobel's approach to this hurdle is to claim futility—he was ignored—and

disability—he could not figure out how to appeal. (Doc. 55 at 4.) Both claims are contradicted by the record. Defendants submitted Strobel's record of grievances filed on the LCCDC grievance kiosk. Inconveniently, these do not appear to be ordered in any rational fashion. But they demonstrate that Strobel was proficient with the grievance system and willing to grieve various issues repeatedly. (Doc. 47-2.)

The record shows that, starting five days after the events, he grieved regarding medical care for his injuries five times, received various responses, and was taken to the medical clinic on January 31. His sole grievance regarding the fight was late, filed more than 48 hours after the events. But as far as his medical concerns went, the grievance process worked. He got care.

But rather than timely exhausting his administrative remedies, Strobel grieved the assault late on January 5, did not appeal, and then filed his initial Complaint two weeks later. (Doc. 1.) If there was an aspect of Strobel's grievance that he believed had been ignored, he could have appealed. The records show that he filed various other appeals through the KIOSK system, so he was aware of how to do it. *See* Doc. 47-2 at 14, 16, and 30. If his grievance was not just medical, he had the capacity to appeal the conduct that he believed violated his rights. He never did before he filed suit, in violation of the strict mandate of the PLRA.

### III.  CONCLUSION

Strobel did file grievances, in which he complained about the events of January 5, 2023. But he never completed the administrative process. LCCDC's grievance policy makes clear that failure to comply will result in a failure to exhaust, and remedies must be exhausted before seeking judicial action. (Doc. 47-3 at 2.) The policy reflects the mandate of the PLRA. Exhaustion is mandatory. Defendants are entitled to summary judgment.

Based on the foregoing, the Court enters the following:

### ORDER

1.  Defendants' motion for summary judgment is **GRANTED**. The Clerk of Court is directed to close this matter and enter judgment pursuant to Fed. R. Civ. P. 58.

2.  All other pending motions are **DENIED** as moot.

3.  The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

DATED this 8th day of May, 2024.

Kathleen L. DeSoto, Magistrate Judge
United States District Court